## DECLARATION of CHRISTOPHER PERHAM

I, Christopher Perham, do hereby declare:

### BACKGROUND/EXPERIENCE

1.  I am currently a Special Agent with the Internal Revenue Service (IRS), Criminal Investigation Division (IRS-CI) and have been so since 2016 and have been employed with the IRS since 2009. While serving in the capacity of Special Agent with IRS-CI, I attended six months of extensive training at the Federal Law Enforcement Training Center's Special Agent Investigative Training program at the National Criminal Investigation Training Academy. I was trained in a wide variety of investigative techniques including surveillance, search warrants, arrest warrants, undercover operations, consensual monitoring, and the legal standards of probable cause as well as many other investigative techniques and applicable laws. I have received additional training in tax law, financial investigation, and both direct and indirect methods of proof. My responsibilities include investigation of possible criminal violations under Title 26 of the U.S. Code as they relate to individuals, partnerships, and corporations as well as related financial statutes under Titles 18 and 31 of the U.S. Code. I have been trained in conducting investigations involving income tax, evasion and identification of false federal income tax returns, money laundering and bank secrecy act violations. As a Special Agent, I have conducted criminal investigations of individuals and their businesses involving the failure to file returns, income tax evasion, false claims, identity theft, securities fraud, bank fraud, wire fraud, money laundering and bank secrecy act violations.

## PURPOSE OF THIS DECLARATION

2.  This declaration is offered in support of a complaint *in rem* seeking forfeiture of personal property, described as:

| Item | Count | Description |
| --- | --- | --- |
| 1 | 9 | Australia 1 oz silver kangaroo coins |
| 2 | 6 | Australia 1 oz silver koala coins |
| 3 | 10 | Australia silver kookaburra coins |
| 4 | 18 | South Africa 1 oz silver Krugerrand coins |
| 5 | 13 | China 30g Ag .999 silver panda bear coins |
| 6 | 1 | Australia 10 oz silver kookaburra |
| 7 | 27 | U.S. 1 oz silver dollar |
| 8 | 2 | South Africa 1 oz gold Krugerrand coins |
| 9 | 1 | Australia 1 oz gold kangaroo coin |
| 10 | 1 | U.S. 1 oz gold coin |
| 11 | 1 | Isle of Man 1 oz gold coin |
| 12 | 16 | Presidential / Sacagawea $1 coins |
| 13 | 2 | Very old looking silver coins of unknown origin |
| 14 | 2 | $25 rolls of $1 coins |
| 15 | 2 | 10 oz silver skulls |
| 16 | 3 | 2 oz silver skulls |
| 17 | 4 | 1 troy oz fine silver bars |
| 18 | 1 | 10 troy ounce fine silver bar |
| 19 | 1 | 1 oz fine gold bar |
| 20 | 2 | 1999 quarter collection (5 quarters each) |
| 21 | 1 | 1/4 unze (oz) Helvetia coin gold |
| 22 | 1 | Isle of Man 1/10 oz gold |
| 23 |  | $588.00 U.S. Dollars |
| 24 |  | $134,800.00 U.S. Dollars |
| 25 |  | $20,304.00 U.S. Dollars |
| 26 | 1 | 1934-A $500 bill |

3.  The property outlined above, hereinafter **Defendant Personal Property**, is property constituting or derived from proceeds obtained directly or indirectly as a result of violations of 18 U.S.C. § 1343, wire fraud. The **Defendant Personal Property** is therefore subject to forfeiture pursuant to 18 U.S.C.§§ 981(a)(1)(C).

**Declaration of Christopher Perham**                                                                 **Exhibit A Page 2**

4.      The information contained in this declaration is information known to me from my training and experience, by personal knowledge, and by written and oral reports provided by witnesses and law enforcement officers, including agents from the Internal Revenue Service Criminal Investigation (IRS-CI) and the Federal Bureau of Investigation (FBI) involved in the investigation of Michael Anastasia. Since this declaration is being submitted for the limited purpose of a complaint *in rem* for forfeiture, I have not included each and every fact known to me concerning this investigation, but only information sufficient to show probable cause that the property and currency in question are subject to forfeiture.

## SUMMARY OF THE INVESTIGATION

5.      In September of 2018, the United States Attorney's Office for the District of Oregon received information and documentation from a victim, Adult Victim-2 (AV2), regarding the continued and on-going use of her social security number by Michael Anastasia (ANASTASIA). IRS-CI and FBI subsequently investigated ANASTASIA's alleged identity theft.

6.      Through the issuance of several subpoenas and multiple witness interviews, investigators learned that ANASTASIA was defrauding another victim, Adult Victim-1 (AV1). Investigators learned that AV1 was introduced to ANASTASIA in or around 1991 as someone who could help secure funds for AV1's business ventures. Between 1991 and 2003, AV1 provided ANASTASIA with $1.4 million dollars based on material representations by ANASTASIA, including ANASTASIA's connections with the U.S. Government and his ability to secure millions of dollars in funding for AV1's business ventures.

7.      In 2007, ANASTASIA was convicted of tax evasion for failure to pay federal income taxes on the funds AV1 provided to ANASTASIA during the initial fraud scheme between 1991-2003.

Wire Fraud

8.      Following ANASTASIA's release from custody in 2013, ANASTASIA continued to make materially false representations about his access to funding sources for AV1's businesses and his ability to obtain those funds to pay AV1 back the money AV1 had previously provided ANASTASIA. AV1 stated that ANASTASIA specifically stated that he was employed by the U.S. Government, that ANASTASIA worked undercover for the U.S. Government, and that ANASTASIA had $4.3 million dollars in the Cayman Islands that had been seized by the U.S. Government.

9.      Based on these misrepresentations, AV1 continued to send payments to ANASTASIA. In total, between 2014 and 2020, AV1 sent ANASTASIA approximately $777,899.00 in additional funds as shown below:

| Year | AMOUNT |
|---|---|
| Transfers 2014 | $ 237,950.00 |
| Transfers 2015 | $ 173,700.00 |
| Transfers 2016 | $ 75,200.00 |
| Transfers 2017 | $ 77,300.00 |
| Transfers 2018 | $ 107,414.00 |
| Transfers 2019 | $ 93,535.00 |
| Transfers 2020 | $ 12,800.00 |
| **Total Transfers from AV1 for the period of 2014 through 01/2020:** | **$ 777,899.00** |

10.     As an example, on or about March 18, 2018, records and interviews showed ANASTASIA, by means of materially false and fraudulent pretenses, representations, promises, and omissions of material fact, caused to be transmitted an interstate wire totaling $4,500.00 from a financial account of AV1 in Texas to ANASTASIA's bank account in Oregon. Records from ANASTASIA's Oregon bank account show that shortly after these deposits, ANASTASIA withdrew the funds from the bank account in cash.

**Declaration of Christopher Perham**                                    **Exhibit A Page 4**

Search Warrant and Interviews

11.     On October 7, 2020, IRS-CI and FBI Special Agents conducted a search warrant on ANASTASIA's Oregon residence, SW Rimrock Way, Redmond, Oregon in Deschutes County. During the warrant, the personal property indicated in Paragraph 2 above, **Defendant Personal Property**, was seized as evidence from a safe within ANASTASIA's residence.

12.     During the warrant, ANASTASIA interviewed with agents and told them that he worked as an advisor for AV1 from 2013 until February 2020 to create a hedge fund that AV1 never licensed. Although ANASTASIA claimed to have met with certain people on the golf course to try and raise money from investors for AV1's hedge fund, ANASTASIA admitted that he doesn't believe he ever raised any money for the hedge fund.

13.     ANASTASIA also admitted that he withdrew cash soon after AV1's money posted to his bank account because he was afraid the IRS would take his money. ANASTASIA said he then put the cash into the safe in his house until he needed it to pay his bills. ANASTASIA estimated that there was approximately $115,000.00 to $130,000.00 in the safe from payments made to him from AV1.

14.     ANASTASIA explained to agents that AV1 had also wired money to his friend and roommate, but claimed the funds were sent to the roommate for taking care of ANASTASIA and his cats periodically. When asked, ANASTASIA said he never worked for the U.S. Government, he never worked undercover for the U.S. Government, and he never had any funds in offshore accounts. ANASTASIA then claimed to not know why AV1 had stated that ANASTASIA told AV1 those things.

15.     Finally, in an interview with ANASTASIA's friend and roommate in December of 2020, the roommate admitted that he had received wire transfers from AV1 from 2016-2018. The

roommate stated that he had received the wires on behalf of ANASTASIA because ANASTASIA was on probation and was not allowed to receive more than $4500.00 per month from AV1. The roommate explained to agents that after AV1 would send funds to his bank account, he and ANASTASIA would go to the roommate's bank together and withdraw the funds. ANASTASIA would then take the cash and store it in his safe at the residence. The roommate also recalled that in 2018, ANASTASIA started investing the money in gold, which ANASTASIA also stored in his safe at the residence.

## CONCLUSION

16.     Based on the facts set forth herein, I believe that probable cause exists to show that the **Defendant Personal Property** is property constituting or derived from proceeds obtained directly or indirectly as a result of violations of 18 U.S.C. § 1343, wire fraud, and is therefore subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C).

I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. §1746.

Executed this 18th day of October 2024.

*s/_Christopher Perham*_____
Christopher Perham
Special Agent
IRS – Criminal Investigation Seattle Field Office